IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ADRIAN MARION SMITH, #331894, | ) Civil Action No. 3:08-3519-MBS-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA DEPARTMENT OF HIGHWAY PATROL; J.C. GAMBRELL, BADGE NO. 514, | ) |
| Defendants, | ) |

Plaintiff filed this action on October 17, 2008.[1] He is currently incarcerated at the Manning Correctional Institution of the South Carolina Department of Corrections. Defendants are the South Carolina Department of Public Safety ("SCDPS")[2] and South Carolina Highway Patrol Officer J. C. Gambrell. Defendants filed a motion for summary judgment on July 6, 2009. Because Plaintiff is proceeding pro se, he was advised on July 7, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] Defendants provide that Plaintiff erroneously refers to this entity as the South Carolina Department of Highway Patrol, but that the correct name of this entity is the South Carolina Department of Public Safety.

additional evidence or counter-affidavits could result in the dismissal of his complaint. On August 11, 2009, Plaintiff filed what appears to be a response to Defendants' motion for summary judgment and his own motion for summary judgment.[3] On August 24, 2009, Defendants filed a response in opposition to Plaintiff's motion for summary judgment.

## DISCUSSION

Plaintiff appears to allege that he was subjected to excessive force during and after his arrest on January 16, 2007.[4] He requests ten million dollars in damages. Complaint at 3-5. Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to Eleventh Amendment immunity; (2) Plaintiff fails to show that his Fourth Amendment rights were violated in connection with his arrest; (3) Plaintiff fails to show that his constitutional rights were violated because he has not shown that his injuries were anything more than de minimis; and (4) Defendants are entitled to qualified immunity. Defendants contend that Plaintiff's motion for summary judgment should be denied because it was untimely filed and his motion concerns issues not raised in his complaint.[5]

---

[3]To the extent that this is a motion for a preliminary injunction, it is recommended that it be denied, as Plaintiff has not shown that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., __ U.S __, 129 S.Ct. 365, 374-376, 172 L.Ed.2d 249 (2008).

[4]In his motion for summary judgment, Plaintiff appears to allege that correctional officers at SCDC have improperly handled his legal mail. The correctional officers, however, are not parties to this action.

[5]Plaintiff's motion for summary judgment is untimely. The deadline for filing dispositive motions in this action was July 8, 2009. See Doc. 28 (Order extending time to file dispositive motions).

1. **Excessive Force**

Plaintiff alleges that Defendants subjected him to excessive force in violation of his constitutional rights. Defendants contend that their use of force was objectively reasonable and Plaintiff fails to show anything more than de minimis injury.

Specifically, Plaintiff alleges that he was at a driver's license checkpoint on January 16, 2007, at which time he was severely beaten by Defendant Gambrell, Trooper McCord, and other unnamed police officers. He claims that, after he was handcuffed, he was hit in the face with a black metallic object, sprayed excessively with pepper spray, knocked to the ground, kicked, stomped, and beaten. Plaintiff alleges that troopers pulled up on the handcuffs while they stomped on his back, repeatedly pepper sprayed him, and threatened to kill him. He claims that he asked the troopers to take him to a hospital, but they would not and Augusta Police Officer Eric Schafer had to tell the troopers to stop abusing him and to take Plaintiff to a hospital before they actually did so. Plaintiff claims that he suffered chipped teeth, scaring to his face, permanent nerve damage to his left eye, and permanent injuries to his right shoulder as a result of the incident.[6]

   a. **Arrest/Fourth Amendment**

To the extent that Plaintiff alleges that he was subjected to excessive force during the course of his arrest, his claims are governed by the Fourth Amendment. The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or

---

[6]Defendants provide that Plaintiff was arrested on charges of unlawful possession of a pistol, driving under the influence, simple possession of marijuana, open container of beer, and resisting arrest. During the same time frame, Plaintiff was indicted for the unrelated crime of Burglary. Defendants provide that during the course of plea bargaining, the Solicitor agreed to take a plea to the Burglary offense and to nol pros the charges made by the Highway Patrol on the night of the alleged incident. Defendants' Motion for Summary Judgment at 4; see Gambrell Aff., Para. 5.

3

other "seizure" of a person. Graham v. Connor, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983), see also Lester v. City of Chicago, 830 F.2d 706, 711 (7th Cir. 1987); and Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.1985) (en banc). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. Garner, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. See Lester, 830 F.2d at 712; see also Garner, 471 U.S. at 26 (O'Connor, J., dissenting).

The standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. Scott v. United States, 436 U.S. 128, 137-38 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22 (in assessing the reasonableness of a particular search or seizure "it is imperative that the facts be judged against an objective standard"). Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712. The clearly established standard for the use of excessive force at the time of this incident was whether a

4

reasonable officer in the defendants' place could have had probable cause to believe that the plaintiff posed a threat of serious harm to others. See Garner, 471 U.S. at 11. When considering a police officer's actions under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396; Schultz v. Braga, 455 F.3d 470, 476-477 (4th Cir.2006); see Foote v. Dunagan, 33 F.3d 445, 447-448 (4th Cir.1994) (drawing of weapon, grabbing of car keys, and pulling driver out of car reasonable actions in investigative stop); Martin v. Gentile, 849 F.2d 863, 869 (4th Cir.1988).

Defendant Gambrell states that Plaintiff failed to acknowledge his request to lower his window at the checkpoint; when he asked Plaintiff to exit the vehicle, Plaintiff walked in a crouched position and appeared to be clutching at something; Plaintiff appeared to have a large object in the front of his pants; and when Gambrell attempted to frisk Plaintiff, Plaintiff turned away and attempted to flee. He states he discharged a can of pepper spray in an effort to control Plaintiff, but this appeared to have no effect on Plaintiff, so he sprayed Plaintiff again before he and two other law enforcement agents were able to handcuff Plaintiff. Gambrell states that after Plaintiff was subdued, water was poured on Plaintiff's face in order to lessen the effect of the pepper spray. Gambrell Aff.

John McCord, currently a Deputy Sheriff for Aiken County, was a trooper with the SCDPS at the time of the alleged incident. He states that he was checking another driver, but had to assist Gambrell because Plaintiff broke away from Gambrell. McCord states that he tackled Plaintiff and brought him to the ground, but Plaintiff "was acting like a mad man, kicking, swinging his arms trying to hit us, and still attempting to put his hands towards his waist." He states that Plaintiff

continued to fight them and a gun fell out of Plaintiff's clothes onto the ground. McCord states that after they got Plaintiff under control, water was poured on Plaintiff's face in an effort to lessen the effect of the pepper spray. McCord Aff., Paras. 1-2, 4. Thomas Velky, who is now retired, was a member of the South Carolina Highway Patrol at the time of the alleged incident. He states that he assisted Defendant Gambrell and Officer McCord on the night of the incident because Plaintiff was fighting with officers. He states that he grabbed Plaintiff's legs and attempted to help subdue him. Velky Aff., Para. 3. Eric Schafer, a Police Officer for the North Augusta Department of Public Safety, states that he was not present at the scene of Plaintiff's arrest, but did see him later at the North Augusta Department of Public Safety. He states that Plaintiff was decontaminated from the pepper spray prior to his being placed in the breath testing room. Schafer states that he never saw any troopers hit, beat, or berate Plaintiff in any fashion. His Department's records indicate that Plaintiff was transported from the arrest site to the Department by Melonie Chavis (not Gambrell). Schafer Aff., Paras. 1, 3-4.

Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them. Although Plaintiff disputes Defendants' version of the events, he does not dispute that he did not roll down his window of his car. He also admits that he did not comply with Defendant Gambrell's first request for him to exit the car (instead asking Gambrell "what's the problem officer?"). Plaintiff's Motion for Summary Judgment at 2-3. Officers noted a bulge in Plaintiff's pocket and state that a loaded gun fell out of Plaintiff's pocket during the struggle. Plaintiff has not provided anything to dispute that he had a loaded gun in his possession at the time of the alleged incidents.

### b. Post-Arrest/Fourteenth Amendment

To the extent that Plaintiff alleges that Defendants used excessive force against him after he was placed under arrest, his claims are governed by the Fourteenth Amendment. See Taylor v. McDuffie, 155 F.3d 479, 483-84 (4th Cir. 1998). The Due Process Clause protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'" United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)(quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)), cert. denied, 498 U.S. 1049 (1991). In Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994 (en banc), cert. denied, 513 U.S. 1114 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis. Although Norman concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees. Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that Bell requires), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury). Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See Norman, 25 F.3d at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be 'of a sort

> repugnant to the conscience of mankind,' and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to show that his Fourteenth Amendment rights were violated because the injuries he received were de minimis. Defendants have submitted a recording of incidents at the City of North Augusta Police Department (during which time Plaintiff was waiting for administration of a DataMaster - Breathalyzer test). In this recording, it appears that Plaintiff's skin on his torso is red and he has puffiness around his left eye. It, however, also shows him easily moving and pacing about the room. On the tape, Plaintiff admits that he had smoked THC (marijuana) which was "laced" with "something." The parties submitted records from the Aiken Regional Medical Center Emergency Room. These records indicate that Plaintiff complained of shoulder pain and an arm injury. His discharge diagnoses were acute right shoulder pain and an acute left eye contusion (from pepper spray). X-rays revealed no fracture, dislocation, or destruction lesions to Plaintiff's right shoulder. An anti-inflammatory medication (Motrin) was prescribed. The parties also submitted copies of Plaintiff's medical records from the Southeastern Service Group at Aiken Detention Center. Records from January 24, 2007 indicate that Plaintiff had a bruised left eye, chipped tooth, and reported that he had experienced an eye and right arm injury in the past three months. Motrin (which had been prescribed at the Aiken Regional Medical Center) was dispensed for the first ten days of Plaintiff's incarceration. After that time, the records only reveal that Plaintiff was treated for complaints of mental problems. Plaintiff has presented nothing to show that he required any further care for his injuries.

Defendants' use of force was de minimis. See e.g., Norman v. Taylor, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024 (1992); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order to inmate and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force; Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed

against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992); Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show he suffered more than de minimis injuries, he fails to show that the use of force amounted to punishment in violation of the Fourteenth Amendment. "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); see also United States v. Cobb, supra; and Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1299-1300 (E.D.N.C. 1989).

In this case, analysis of these factors fails to show that the use of force amounted to punishment. First, force was necessary to gain control of Plaintiff. Although he disputes Defendant Gambrell's version of the events, he does not dispute that he did not roll down the window of the car or comply with Defendant Gambrell's first directive to exit the car. Further, he has provided nothing to dispute that he was carrying a loaded gun at the time. As discussed above, there is no indication that Plaintiff suffered anything more than de minimis injury from the incident. Finally, the officers' actions appear to have been a good-faith effort to gain control over Plaintiff.

## 2. **Immunity**

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities. Defendant Gambrell contends that he is entitled to qualified immunity in his individual capacity. The

11

Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendant Gambrell violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Gambrell is entitled to qualified immunity in his individual capacity.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 30) be **granted**. It is also recommended that Plaintiff's motion for summary

12

judgment (Doc. 35) be **denied**.



Joseph R. McCrorey
United States Magistrate Judge

December 3, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).